UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOURCEONE GLOBAL PARTNERS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KGK SYNERGIZE, INC., ) <br> ) <br> Defendant. ) <br> ———————————————————— ) <br> KGK SYNERGIZE, INC., ) <br> ) <br> Counterclaim Plaintiff and ) <br> Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SOURCEONE GLOBAL PARTNERS, ) <br> LLC, etc., ) <br> ) <br> Counterclaim Defendant, ) <br> ) <br> and ) <br> ) <br> JESSE LOPEZ, ) <br> ) <br> Third-Party Defendant. ) | Case No. 08 C 7403 <br><br> Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

On December 29, 2008, plaintiff, SourceOne Global Partners, LLC ("SourceOne") filed suit against defendant, KGK Synergize, Inc. ("KGK"). In Counts V and VI, SourceOne seeks a declaratory judgment that it did not infringe upon U.S. Patent No. 6,987,125 ("the '125 Patent") and that, in the alternative, the '125 Patent is invalid. KGK has filed a motion to dismiss under Rules

---

[1]On February 27, 2009, by consent of all parties and pursuant to 28 U.S.C. § 636(c), this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 27).

12(b)(1) and 12(b)(7), arguing that Counts V and VI of the Complaint must be dismissed for lack of subject matter jurisdiction, or, in the alternative, for failure to join the United States ("the Government"), an indispensable party to the action (doc. #29). After KGK and SourceOne completed briefing on the motion, the Government filed a Statement of Interest offering its views as to why Counts V and VI of the complaint should be dismissed (doc. # 50). The Government's statement has led to a response by SourceOne (doc. # 51) and a reply by KGK (doc. # 52).

We have considered all of the submissions by the parties and the Government.[2] For the reasons set forth below, KGK's motion is denied.

I.

The Court begins by summarizing the background information and complaint allegations germane to this motion. The '125 Patent spawned from Patent Application 09/528,488, titled "Compositions and Methods of Treating, Reducing and Preventing Cardiovascular Diseases and Disorders with Polymethoxyflavones" (Compl, Ex. 6, '125 Patent).[3] That application was filed on March 17, 2000, and listed as inventors Najla Guthrie, Elzbieta Maria Kurowska, John A. Manthey, and Robert M. Horowitz (through his legal representative Sylvia Horowitz). Two years later, on March 6, 2002, Mr. Manthey and Ms. Horowitz assigned their rights in the patent application to the

---

[2] SourceOne objects to the Government's statement because the Government filed it without leave of Court, and without filing an appearance or seeking leave to intervene (doc. # 51: Pl.'s Resp. at 2). In turn, KGK criticizes SourceOne for filing a response to the Government's statement without seeking leave of Court (doc. # 53: Def.'s Reply at 1 n.3) – even though KGK filed its reply without seeking leave of Court. In fact, both the parties and the Government have flouted applicable rules by filing memoranda in connection with the motion to dismiss that were not authorized by the briefing schedule, without seeking leave of Court to do so. We overlook that conduct in this circumstance and consider the submissions, because the Court would have allowed the Government to express its views – and the parties to respond – had they only asked. However, the parties should be on notice that the Court will not show similar indulgence in the future. Any unauthorized filings will be summarily stricken.

[3] The Court may consider exhibits attached to and incorporated into the complaint when ruling on a motion to dismiss. *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005).

Government, as represented by the Secretary of Agriculture (doc. # 30, KGK Mem. in Supp. of Mot. to Dismiss, Passner Decl., Ex. A).[4] Thus, as of that date, the patent application that later issued as the '125 Patent was co-owned by the Government, Ms. Guthrie and Ms. Kurowska.

On June 30, 2003, Ms. Guthrie, as President and CEO of KGK, entered into a licensing agreement with SourceOne, in which KGK granted an exclusive license to SourceOne to manufacture, distribute, and sell Sytrinol (Compl. ¶ 6; Compl., Ex. 1, Licensing Agreement at 2-3). KGK owns the rights to Sytrinol, which KGK generally defines as a nutritional supplement for lowering cholesterol (Compl. ¶ 6, Ex. 1 (Licensing Agreement) at 2-3; KGK Answer/Countercl. at 26-27). The agreement also granted KGK an exclusive license in those portions of the "KGK Patents" related to the Sytrinol product (Compl., Ex. 1, Licensing Agreement ¶ 2.1). The agreement defined "KGK Patents" to include Application 09/528,488 (Compl., Ex. 1, Licensing Agreement, Ex. A). The licensing agreement stated that KGK "is, and will at all times remain, the owner of the KGK Patents" (Compl., Ex. 1, Licensing Agreement ¶ 4.2). The Government was not a signatory to the license, and the licensing agreement did not refer to the Government's ownership interest in the patent application.[5]

---

[4] Because KGK raised the issue of subject matter jurisdiction, the Court may consider extrinsic evidence, such as these documents attached to KGK's motion to dismiss, to determine whether we can exercise jurisdiction. *Johnson v. Orr*, 551 F.3d 564, 567 (7th Cir. 2008).

[5] We point this out as a factual matter, and not to suggest anything untoward about the absence of the Government from that licensing arrangement. "In the absence of any agreement to the contrary, each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States, . . . , without the consent of and without accounting to the other owners." 35 U.S.C. § 262. That section has been construed to apply as well to licensing agreements. *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1373 (Fed. Cir. 1999).

On January 4, 2005, Ms. Guthrie and Ms. Kurowska assigned to KGK their rights in Application 09/528,488 (KGK Mem. in Supp. of Mot. to Dismiss, Passner Decl., Ex. A). The '125 Patent issued one year later, on January 17, 2006 (Compl., Ex. 6, '125 Patent).

In late 2007, SourceOne announced that it had developed its own nutritional supplement for promoting heart health, called Cholesstrinol, which it continues to make and sell (Compl. ¶¶ 7, 13). Beginning in late 2008, KGK began sending letters to SourceOne's business partners, suppliers, and customers, warning that KGK would consider the sale of Cholesstrinol after January 1, 2009 to infringe several patents (including the '125 Patent), and that KGK would "strictly pursue any patent infringements by whatever means are necessary" (Compl. ¶ 10, Exs. 3-6).

KGK ultimately turned its attention directly to SourceOne. By a letter dated December 11, 2008, KGK sent a cease and desist letter to SourceOne claiming that Cholesstrinol is "a product identical" to Sytrinol. KGK stated that once the license agreement expired at the end of 2008, SourceOne's marketing and sale of Cholesstrinol would infringe several patents owned by KGK, including the '125 Patent, which KGK said that it owned (Compl. ¶ 12 and Ex. 7). KGK demanded that SourceOne and its affiliates immediately cease and desist making, selling, and offering for sale Cholesstrinol products, and warned that KGK "will vigorously enforce its rights where it believes those rights are being infringed and litigation cannot otherwise be avoided" (*Id.*).

KGK did not disclose the Government's ownership of the '125 Patent, although the Government's ownership interest was not a secret: the face of the '125 Patent identifies the Government as an assignee of the patent. Moreover, while the Government is not copied on the cease and desist letter, the Government does not assert that KGK's action was unauthorized when it occurred or that the Government now has objection to KGK threatening suit on the '125 Patent.

4

The cease and desist letter gave SourceOne until December 29, 2008, to confirm that it would comply with KGK's demand. On that date, SourceOne gave KGK its answer by filing this lawsuit. SourceOne's complaint seeks a declaration of noninfringement and invalidity as to each of the three patents that KGK claimed SourceOne infringed, including the '125 Patent (Counts I-VI) and a declaration of noninfringement of the Sytrinol trademarks (Count VII). In addition, SourceOne asserts claims for tortious interference with contractual rights, tortious interference with prospective economic advantage, injurious falsehood and product disparagement, defamation *per se*, common law unfair competition, and unfair competition under the Lanham Act (Counts VIII-XIII). KGK has answered all of SourceOne's claims except those in Counts V and VI, which are the claims for a declaration of noninfringement and invalidity as to the '125 Patent. As to those claims, KGK filed the motion to dismiss that is now before the Court.

## II.

KGK argues that this Court lacks subject matter jurisdiction over SourceOne's claims in Counts V and VI concerning the '125 Patent because the Government is immune from suit, and KGK may not be sued for a declaratory judgment of invalidity or noninfringement of the '125 Patent in the absence of the patent's co-owner (Def.'s Motion at 1-2). In the alternative, KGK argues that this Court should dismiss Counts V and VI under Federal Rule of Civil Procedure 19 on the ground that the Government is a required party for the suit concerning the '125 Patent which cannot be joined, and that the suit should not proceed in the Government's absence (*Id.*). We address – and reject – each of these arguments.[6]

---

[6] In its response to the Government's Statement of Interest, SourceOne states that it would dismiss Counts V and VI without prejudice "if KGK and/or the United States will provide SourceOne with a covenant not to sue for infringement of the '125 Patent" (Pl.'s Resp. to Gov't Stmt. at 4). The Court directed the parties to meet and confer

5

A.

In order for a court to have subject matter jurisdiction of a claim brought under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "the dispute [must] be definite and concrete, touching the legal relations of parties having adverse legal interests; and [] it [must] be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal citations and quotations omitted). Put another way, in deciding whether it has subject matter jurisdiction, a court must consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

Plaintiff's declaratory judgment claim with respect to the '125 Patent meets all of the requirements set forth in *MedImmune*. *First*, KGK and SourceOne are parties with adverse interests in connection with the '125 Patent: KGK's cease and desist letter claimed that SourceOne's Cholesstrinol product infringes that patent, and SourceOne claims otherwise. *Second*, the parties' controversy is "real and substantial," as demonstrated by the fact that the cease and desist letters that KGK sent to SourceOne and SourceOne's business partners and customers threatened legal action if they continued to market or sell Cholesstrinol. In *MedImmune*, 549 U.S. at 137, the Supreme

---

about this proposal and invited the United States to join in the meet and confer (doc. # 52, 4/30/09 Min. Order). The parties have since informed the Court that they were unable to reach agreement (doc. # 56).

In its response, SourceOne also asked the Court to condition any dismissal it might order on KGK and/or the Government providing a covenant not to sue on the '125 Patent (Pl.'s Resp. to Gov't Stmt. at 4-5). KGK takes issue with that proposal (Def.'s Reply at 1-2). In light of our denial of the motion to dismiss, we have no need to address that request.

6

Court reversed and remanded the district court's dismissal for lack of subject matter jurisdiction where the patent licensee similarly sought a declaratory judgment that a patent was invalid, unenforceable, or not infringed after the patent owner threatened to terminate the license agreement and sue for patent infringement. *Third*, this case does not require suppositions about "a hypothetical state of facts" because the facts – SourceOne's allegedly-infringing activities with regard to Cholesstrinol – are real and known. *Fourth*, the declaratory judgments SourceOne seeks on the '125 Patent would provide specific relief: a declaration as to whether Cholesstrinol infringes the '125 Patent and whether the '125 Patent is valid.

Further support for the conclusion that this Court has subject matter jurisdiction over SourceOne's declaratory judgment claim as to the '125 Patent can be found in Federal Circuit authority that in a patent case, an actual controversy exists "where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). That is precisely the dilemma created by the position that KGK took in the cease and desist letters.

KGK does not dispute any of this. Indeed, KGK does not claim that the Court lacks jurisdiction to hear SourceOne's claims for declaratory relief as to the other two patents in suit – both of which were the subject of the same cease and desist letters that threatened legal action over the '125 Patent. Rather, KGK argues that the Court lacks jurisdiction to hear SourceOne's declaratory judgment claims on the '125 Patent because KGK's co-owner of the patent, the Government, is immune from suit. We disagree.

The Seventh Circuit has recently remarked that a "court has subject-matter jurisdiction if it has the authority to decide the case either way." *Collins v. United States*, ___ F.3d ___, 2009 WL 1162529, *4 (7th Cir. May 1, 2009) (internal quotations and citations omitted). "'[T]o say that Congress has authorized the federal courts to decide a class of disputes is to say that subject-matter jurisdiction is present.'" *Id.* at 5 (citations omitted). Plainly, Congress has authorized courts to decide suits between one private party (SourceOne) and another private party (KGK), asserting a concrete dispute over patent infringement and validity. The fact that KGK's co-owner of the '125 Patent enjoys sovereign immunity from suit does not divest the Court of subject matter jurisdiction over the claim against KGK.

We have considered KGK's authorities, which we do not find persuasive for the proposition that the Court lacks subject matter jurisdiction over a claim against KGK because of SourceOne's inability to join KGK's co-owner, the Government, as a defendant.[7] If the inability to join a sovereign as a party had the automatic effect of nullifying the suit against other private defendants, Rule 19 would be rendered superfluous in these cases. That is not the law. *See, e.g., Republic of the Philippines v. Pimentel*, ___ U.S. ___, 128 S.Ct. 2180 (2008) (addressing whether suit could proceed in the absence of a foreign sovereign under Rule 19, and not as a matter of subject matter jurisdiction). The Government's co-ownership of the '125 Patent with KGK, and the inability to join

---

[7]For example, KGK cites *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090 (Fed. Cir. 1998), for the proposition that if a licensee lacks standing to bring an infringement action without joining the patent owner, then the court lacks jurisdiction over the alleged infringer's declaratory judgment claim of invalidity and noninfringement (Pl.'s Mem. at 4-5). In that case, the court held that a *non-exclusive* licensee lacked standing to sue an alleged infringer without joining the patent owner. *Enzo*, 134 F.3d at 1094. The Court held that "it follows" that the court lacked jurisdiction over the alleged infringer's declaratory judgment claims against the non-exclusive licensee for failure to join the patent owner under Rule 19. *Id.* The issue presented in that case – that the *non-owner, non-exclusive* licensee had to be joined with the actual party in interest, the patent owner – is distinguishable from the instant case, in which KGK is a co-owner who owns a pro rata undivided interest in the entire patent at issue, and who has exercised that interest by issuing cease and desist letters threatening to enforce that interest.

8

the Government as a defendant, does not divest this Court of subject matter jurisdiction over the case or deprive SourceOne of standing to bring suit against KGK on the '125 Patent.

**B.**

We now turn to KGK's alternative argument, which is that the Court should dismiss Counts V and VI pursuant to Rule 19 because the Government is a required and indispensable party which SourceOne cannot join (KGK Mem. at 3). The parties agree that the Government is a "required" party within the meaning of Rule 19(a), and thus must be joined if feasible. They further agree that joinder of the Government is not feasible here, as the Government has not waived its sovereign immunity and thus is not subject to suit.

However, the Rule 19 inquiry does not end there. Rule 19(b) states:

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>    (A) protective provisions in the judgment;
>    (B) shaping the relief; or
>    (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). These factors are non-exclusive, *Pimental*, 128 S.Ct at 2188, thus leaving trial courts with the latitude to give weight to all considerations that may guide the discretionary decision of whether to allow a given case to proceed. *Id.* (the determination of whether to allow a case to proceed in the absence of a required party "will turn upon factors that are case specific, which is consistent with a Rule based on equitable considerations"). Although the Supreme Court has not

9

yet addressed the standard for reviewing Rule 19(b) decisions, *see Pimentel*, 128 S.Ct. at 2189, the Seventh Circuit reviews a trial court's determination of indispensability under Rule 19(b) with deference, "because of the fact-intensive and multifaceted character of the inquiry, and also because of the fuzzy terms ('practical matter,' 'might be prejudicial,' 'equity and good conscience') and the confusing overlap between the different subsections of the rule." *Salton, Inc. v. Philips Domestic Appliances and Pers. Care B.V.*, 391 F.3d 871, 877 (7th Cir. 2004).

The Government correctly notes that "[t]he main thrust of SourceOne's argument to be able to continue the litigation on Counts V and VI without the Government is that it would be unfair if KGK could continue to threaten suit for infringement of the '125 patent, but remain immune from a declaratory judgment suit to resolve the validity and infringement issues for the '125 patent because the Government, as a co-owner of the patent, cannot be joined in the action" (Gov't Stmt. at 4). The Government then criticizes SourceOne for failing to "address the prejudice that would result to the Government if rights under its patent are adjudicated in its absence. . . ." (*Id.*).

We agree with the Government that the Rule 19(b) analysis requires us to consider potential prejudice both to SourceOne, KGK, and the Government. As the Seventh Circuit has commented, the Rule 19(b) factors that guide the ruling on indispensability "boil down to telling the judge to balance the harm to the party opposing dismissal against the harm to an absent party from the continuation of the litigation in its absence." *Salton*, 391 F.3d at 880. We find that in this case, the balance tilts in favor of allowing the claims against KGK on the '125 Patent to proceed, despite the inability of SourceOne to join the Government as a party.

10

### 1.

The first factor of Rule 19(b) is the extent to which a judgment rendered in the party's absence might prejudice that person or the existing parties. In assessing that factor, we consider whether the interests of the absent party are "adequately protected by those who are present." *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1272 (Fed. Cir. 1998).

In *Dainippon*, plaintiff sued CFMT and CFM for a declaratory judgment of noninfringement and invalidity of a patent that CFMT owned and licensed on an exclusive basis to its parent, CFM. That license reserved to CFMT the exclusive right to further sublicense the patent, and to take legal action in the event of infringement. The trial court dismissed CFMT for lack of personal jurisdiction, and then dismissed the claim against CFM on the ground that under Rule 19 the case could not proceed in the absence of CFMT.

On appeal, the Federal Circuit reversed. The appeals court held that the trial court erred in concluding that it lacked jurisdiction over CFMT, and further held that even if CFMT could not be sued, the trial court abused its discretion in concluding that CFMT was an indispensable party. The Federal Circuit found that CFMT's ownership interest would be adequately protected by CFM, "a party that owns CFMT in its entirety . . . and that has manifested its obvious concern over the maintenance of CFMT's patents." *Dainippon*, 142 F.3d at 1272. The court reasoned that even in its absence, CFMT's interests would be protected because CFMT and CFM "share the common goal of assuring that the [] patent not be held invalid or be infringed by Dainippon . . . ." *Id.*[8]

---

[8] To the same effect is *Extra Equipmentos E Exportacao LTDA v. Case Corporation*, 361 F.3d 359 (7th Cir. 2004). In that case, the Seventh Circuit reversed a trial court's dismissal of a suit against Case Corporation on the ground that its wholly-owned subsidiary, Case Brasil, was an indispensable party that could not be joined. The court remanded the case for further consideration of the Rule 19 issue, commenting that "given the complete identity of interests by virtue of Case's being the sole owner of Case Brasil, we find it hard to see how Case Brasil can be harmed by not being made a party to the suit in Chicago." 361 F.3d at 364.

As in *Dainippon*, the Rule 19(b)(1) factor weighs strongly in favor of allowing the claims on the '125 Patent to proceed in the absence of the Government. The Government argues that it will suffer prejudice if its rights under the '125 Patent are adjudicated in its absence because if the patent is declared invalid, the Government will have "lost substantive rights without an opportunity to defend its rights to the claimed inventions of the patent" (Gov't Stmt. at 4-5). However, we have been offered no evidence that KGK and the Government have any conflicting interests with respect to the '125 Patent, and no reason to believe that KGK is unable to vigorously assert and protect its mutual interest with the Government in asserting the validity of the '125 Patent and challenging any alleged infringement of it. To the contrary, KGK has demonstrated its willingness to champion the validity of the '125 Patent and to attack any alleged infringement of it, as shown by the cease and desist letters it sent to SourceOne and its customers and associates. The Government has not asserted any dissatisfaction with SourceOne's actions in doing so. KGK's defense of its commercial interests based in the '125 Patent will adequately protect the Government's interests as well.[9]

We also consider this factor to be of special importance in this case, due to the fact that the absent party is the Government. In *Pimental*, the Supreme Court stated that under Rule 19, "dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign." 128 S.Ct. at 2191. Conversely, the absence of prejudice to the Government in

---

[9]Both the Government and KGK assert that the Government would suffer prejudice if, in its absence, the '125 Patent is declared invalid (Def.'s Mem. at 5; Gov't Stmt. at 5). However, that argument ignores the foregoing authorities that teach that the Rule 19(b)(1) inquiry looks to the process and not merely the outcome. The Government will not suffer prejudice within the meaning of Rule 19(b)(1), so long as KGK is able to protect the Government's interest in the '125 Patent. That is the case here, since KGK's interest and that of the Government are in harmony. To the extent that the Government argues that it is prejudiced by an inability to insulate from review a patent that might be held invalid (and we of course express no view on the validity of the '125 Patent), we find that argument unpersuasive on the facts of this case.

this case, due to the ability of KGK to protect the Government's interests, weighs strongly in favor of allowing the case to proceed.

**2.**

Turning to the second consideration set forth in Rule 19(b), the Court does not see how it would be able to lessen any alleged prejudice to the Government through protective provisions in the judgment, shaping relief, or other measures. However, that factor carries little weight in this case for two reasons. *First*, as we have explained, the potential prejudice to the Government is already adequately addressed by the ability of KGK to fully advocate and protect the Government's interests. *Second*, the Federal Circuit has held that "the court's ability to shape relief to avoid prejudice[] is of little relevance in the context of a patent declaratory judgment suit because the relief sought in such a suit does not depend on the patentee's presence in court." *Dainippon*, 142 F.3d at 1272-73.

**3.**

The third factor set forth in Rule 19(b), whether a judgment rendered in the absence of the missing party would be adequate, "refers to the public stake in settling disputes by wholes, whenever possible." *Pimentel*, 128 S.Ct. at 2193 (internal quotations and citations omitted). KGK's argument that proceeding in the absence of the United States would lead to multiple suits and inconsistent judgments (KGK Mem. at 6) is a nonstarter. KGK cannot argue on the one hand that the United States is not amenable to suit due to sovereign immunity, and then on the other hand argue that multiple suits against the United States loom on the horizon because the United States would "not be bound by any judgment entered in this action" (*Id.*). In fact, as the Federal Circuit noted, the third factor may favor maintenance of a declaratory judgment suit because it does not require an

affirmative act by the absent party. *Dainippon*, 142 F.3d at 1273. A declaration of invalidity or noninfringement would resolve the case as a whole as to SourceOne and the '125 Patent. *Id.*

4.

Finally, we consider Rule 19(b)(4), which requires us to consider whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. This factor favors dismissal if there exists another forum in which all parties could be joined in the suit. *Dainippon*, 142 F.3d at 1273. Here, KGK's only suggestion for an alternative forum is the Court of Federal Claims (KGK Mem. at 3). However, 28 U.S.C. § 1498(a) permits private parties to bring patent infringement suits against the United States in the Court of Federal Claims for certain money damages only, and thus it would not provide an adequate forum for SourceOne's declaratory judgment claims.

Thus, KGK and the Government are unable to point to any adequate remedy that SourceOne would have, if Counts V and VI are dismissed, to receive judicial guidance on whether the '125 Patent blocks its efforts to market and sell Cholesstrinol. That factor weighs heavily in favor of allowing Counts V and VI to proceed.

KGK and the Government are therefore reduced to arguing, at bottom, that those are the breaks for SourceOne: that this absence of any other remedy for SourceOne is simply "the inevitable effect" of the United States' ability to assert sovereign immunity (KGK Mem. at 6; Gov't Stmt. at 8). Apparently, KGK and the Government see no unfairness in requiring SourceOne to wait until they together decide to sue SourceOne for infringement before SourceOne can raise its invalidity and noninfringement defenses (KGK Mem. at 6), while KGK is left free to continue threatening SourceOne or its business associates and customers with suit for infringement of the '125 Patent.

We do not share KGK's and the Government's comfort with that approach. We view the Rule 19(b) factors through the prism of "equity and good conscience." In so doing, we cannot dismiss as lightly as do KGK and the Government the prejudice that SourceOne would suffer if its declaratory judgment claims against KGK were dismissed. The approach urged by KGK (and the Government) would allow KGK to threaten legal action against SourceOne (or others) with impunity. For those who gave into those threats, KGK would receive the benefit of the patent (a cessation of the alleged infringing conduct and perhaps compensation) without the need to do anything more. For those who might rear up and seek a judicial resolution, KGK could retreat behind the Government's cloak of immunity and prevent the infringement or validity of the '125 Patent from ever being tested in court. That result not only would create prejudice to SourceOne in this case, but also would disserve the broader public. We fail to see how the public interest is advanced by allowing a private patentee such as KGK that kind of unreviewable sway in exercising its patent rights.

We disagree with KGK and the Government that *Pimentel* requires a different result. In that case, Merrill Lynch filed an interpleader action to determine the ownership of some $35 million in funds stemming from property allegedly stolen by Ferdinand Marcos when he was President of the Republic of the Philippines. Among the parties named in the interpleader action were the Republic of the Philippines and the Philippine Presidential Commission on Good Governance. Both the Republic of the Philippines and the Commission were dismissed from the case based on their assertion of foreign sovereign immunity. The trial court held, and the appeals court agreed, that the case could proceed in their absence. The trial court ultimately awarded the funds to the Pimental class, and the appeals court affirmed. Employing a Rule 19(b) analysis, the Supreme Court reversed.

128 S.Ct. at 2191-94. However, there are important factors that distinguish this case from the situation that the Supreme Court addressed in *Pimental*.

*First*, the Supreme Court found that the Republic of the Philippines and the Commission would suffer real prejudice from the adjudication in their absence. 128 S.Ct. at 2191-92. However, in that case, no other party was aligned with the interests of the Republic of the Philippines and the Commission, and thus no other party had the ability or incentive to protect their interests. Indeed, the interests of the foreign sovereigns and the other claimants were antagonistic: they all asserted competing claims to the funds. By contrast, in this case, KGK has a common interest with the Government in protecting the '125 Patent and has the ability and incentive to fully protect their mutual interest.

*Second*, in *Pimental*, the Supreme Court explained that the fourth factor of Rule 19(b), whether the plaintiff would have an adequate remedy if the case were dismissed, weighed in favor of dismissal. In reaching that conclusion, the Supreme Court held that the plaintiff to consider under that factor was Merrill Lynch, the stakeholder which had initiated the action, and not the claimants to the funds. 128 S.Ct. at 2193. The Supreme Court stated that dismissal would not cause prejudice to Merrill Lynch, but in fact would serve some of the goals of interpleader and would "protect Merrill Lynch in some respects." *Id.* By contrast, the prejudice in this case to SourceOne if Counts V and VI are dismissed is real, and is significant.

*Third*, the Supreme Court found significant the interests of the foreign sovereigns in "comity and dignity," which in that case took the form of "allowing a foreign state to use its own courts for a dispute if it has a right to do so. The dignity of a foreign state is not enhanced if other nations

16

bypass its courts without right or good cause." 128 S.Ct. at 2190. Those considerations are not present in this case.

In closing, we note that it is not uncommon for the first and fourth factors set forth in Rule 19(b) to be the most critical ones in deciding whether a missing party is indispensable. *See Salton*, 391 F.3d at 877; *Extra Equipmentos*, 361 F.3d at 361. In this case, those two factors – whether the missing party might suffer prejudice if the case is allowed to proceed and whether the plaintiff has an adequate remedy if claims are dismissed – weigh decisively in favor of allowing SourceOne to go forward on Counts V and VI. The other factors relevant to our Rule 19(b) consideration do not warrant a different result.

## CONCLUSION

For the reasons set forth above, KGK's motion to dismiss (doc. # 29) is denied.


ENTERED:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATED: May 13, 2009