# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SOURCE ONE GLOBAL PARTNERS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KGK SYNERGIZE, INC., )<br>)<br>Defendant. )<br>_____)<br>)<br>KGK SYNERGIZE, INC., )<br>)<br>Counterclaim-Plaintiff )<br>and Third-Party Plaintiff, )<br>)<br>v. )<br>)<br>SOURCE ONE GLOBAL PARTNERS, LLC, )<br>d/b/a SOURCEONE GLOBAL PARTNERS, )<br>d/b/a SOURCE ONE GLOBAL PARTNERS, )<br>LLP, and f/k/a SOURCE ONE GLOBAL, LLC, )<br>)<br>Counterclaim-Defendant, )<br>and )<br>)<br>JESSE LOPEZ, )<br>)<br>Third-Party Defendant. ) | No. 08 C 7403<br>Magistrate Judge Schenkier |

## **MEMORANDUM OPINION AND ORDER**

SourceOne Global Partners, LLC ("SourceOne") has filed a 13-count complaint against KGK Synergize, Inc. ("KGK"). SourceOne asserts claims for: (1) declaratory and injunctive relief in connection with three patents – U.S. Patent Nos. 6,239,114 ("the '114 Patent"), 6,251,400 ("the '400 Patent"), and 6,987,125 ("the '125 Patent") and various trademarks (Counts I-VII); (2) unfair competition under common law and under the Lanham Act, 15 U.S.C. § 1125 (Counts XII-XIII); and

(3) common law claims for tortious interference with contract, prospective economic advantage, injurious falsehood and product disparagement, and defamation *per se* (Counts VIII-XI). KGK has answered the complaint, and in addition, has asserted an 11-count counterclaim against SourceOne and an eight-count amended third-party complaint against Jesse Lopez, who is alleged to be the "founder, president and CEO of SourceOne" (Am. Third-Party Comp. ¶ 17).

In its counterclaim, KGK alleges claims against SourceOne for: (1) infringement of the '114, '400 and '125 Patents (Counts I-II and XI); (2) infringement of KGK's trademarks (Count III); (3) unfair competition under the Lanham Act (Counts IV and VII); (4) declaratory judgment and constructive trust (Counts V-VI); (5) breach of contract (Counts VIII-IX); and (6) violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 (Count X). The third-party complaint against Mr. Lopez asserts many of the same claims: (1) infringement of the '114, '400 and '125 Patents (Counts I-II and VIII); (2) trademark infringement (Count III); (3) unfair competition under the Lanham Act (Count IV); (4) breach of contract (Counts V-VI); and (5) violation of the Illinois Deceptive Trade Practices Act (Count VII).

Presently before the Court is Mr. Lopez's motion to dismiss KGK's third-party complaint, pursuant to Fed. R. Civ. P. 12(b)(6) (doc. # 42). For the reasons set forth below, we grant Mr. Lopez's motion to dismiss in its entirety.

## II.

In deciding Mr. Lopez's motion to dismiss, we consider whether KGK's third-party complaint meets the standard set forth in Fed. R. Civ. P. 8(a): the complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy Rule 8(a),

a complaint (or, as here, a third-party complaint) must pass the thresholds of both notice and plausibility.

The notice requirement is met if the complaint describes the claim with sufficient detail to provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). Thus, while a court must accept as true on a motion to dismiss all well-pled allegations, *e.g., Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 977-78 (7th Cir.1999), mere "labels and conclusions" will not do. *Twombly*, 550 U.S. at 555. As the Supreme Court has recently explained, "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but its does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1950 (2009).

The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief".'" *Id.* (*quoting Twombly*, 550 U.S. at 557); *see also EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quotations omitted) ("allegations must plausibly suggest that the defendant has a right to relief raising that possibility above a 'speculative level'"). Assessing whether a complaint meets the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

Finally, we note that *Iqbal* has laid to rest any argument that these pleading standards under Rule 8 apply only to antitrust claims, which were the focus of the pleading at issue in *Twombly*. "Our decision in *Twombly* expounded the pleading standard for 'all civil actions,' . . . and it applies to antitrust and discrimination suits alike." *Iqbal*, 129 S.Ct. at 1953 (citations and quotations omitted). These pleading standards apply with equal force to the claims alleged in KGK's third-party complaint here, and it is therefore with those standards in mind that we assess those claims.

The lead argument in Mr. Lopez's motion to dismiss is that all of KGK's claims rely "on the unsupportable theory that SourceOne is merely Jesse Lopez's alter ego and that, accordingly, the corporate veil of SourceOne should be pierced in order to hold Jesse Lopez accountable for SourceOne's alleged acts and omissions" (Lopez Mem. at 3). Mr. Lopez asserts that KGK's allegations do not "'plausibly suggest' that [KGK] ha[s] a right to relief based on an alter ego theory," and that all of the third-party claims should be dismissed (*Id.* at 7) (quoting *Steel v. GE Money Bank*, 2009 WL 393860 at *7 (N.D. Ill. Feb. 17, 2009).

For its part, KGK asserts that its allegations plausibly suggest an entitlement to relief on an alter ego theory (KGK Mem. 9-11; KGK Suppl. Mem. at 1-5). In addition, KGK asserts that even if it has not sufficiently pled an alter ego claim, KGK has adequately pled direct claims against Mr. Lopez for patent infringement (Counts I-II and VIII) and breach of contract (Counts V-VI) (KGK Mem. at 8-9; KGK Suppl. Mem. at 5).

We conclude that KGK has failed to state a claim under Rule 8(a) for liability under an alter ego theory. We further conclude that all of KGK's claims depend on an alter ego theory, and that as a result all of them must be dismissed.[1]

## III.

We first address KGK's alter ego allegations. Since those allegations must be assessed against the backdrop of the elements required to prove an alter ego claim, *see Iqbal*, 129 S.Ct. at 1950, we begin with a discussion of the relevant principles under Illinois law, which the parties agree supplies the substantive principles that govern the alter ego question.

Under Illinois law, "a corporation is presumed to be 'separate and distinct from its officers, shareholders, and directors, and those parties will not be held personally liable for the corporation's debts and obligations.'" *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 378 (7th Cir. 2007) (*quoting Tower Investors, LLC v. 111 E. Chestnut Consultants, Inc.*, 864 N.E.2d 927, 941 (Ill.App. 2007)). Piercing the corporate veil is not favored and, in general, courts are reluctant to do so. *See In re KZK Livestock, Inc.*, 221 B.R. 471, 478 (Bankr.C.D.Ill.1998) (*citing CM Corp. v. Oberer Dev. Co.*, 631 F.2d 536 (7th Cir.1980); *In re Kevin W. Emerick Farms, Inc.*, 201 B.R. 790 (Bankr.C.D.Ill.1996)). Accordingly, a party bringing a veil-piercing claim bears the burden of showing that the corporation is in fact a "dummy or sham" for another person or entity. *Jacobson v. Buffalo Rock Shooters Supply, Inc.*, 664 N.E.2d 328, 331 (Ill.App.3d 1996). A corporation's veil of limited liability will be pierced only when (1) there is "such unity of interest and ownership that

---

[1] The parties also debate whether the claims under the Lanham Act (Counts III-IV) sound in fraud, and thus are subject to the particularity standard under Fed. R. Civ. P. 9(b) rather than the more liberal notice/plausibility pleading standard in Rule 8 (*compare* Lopez Mem. at 7-9 *and* KGK Mem. at 12). While KGK may have the better of that argument, *see Segal v. Geisha NYC LLC*, 517 F.3d 501, 505 (7th Cir. 2008) (applying Rule 8(a) pleading standards in considering dismissal of claim under the Lanham Act for trademark infringement), we do not reach this question in light of our holding that KGK's alter ego allegations do not satisfy Rule 8.

the separate personalities of the corporation and the individual [or other corporation] no longer exist[,]" and (2) "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir.1985) (*quoting Macaluso v. Jenkins*, 420 N.E.2d 251, 255 (Ill.App.3d 1981) (alteration in original)). Here, we conclude that KGK has not satisfied either requisite to pleading a claim to pierce the corporate veil.

## A.

Illinois courts consider the following factors when determining whether there is sufficient "unity of interest" to justify disregarding the corporate form: "(1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders." *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 778 (Ill.App.3d 2005). "The court will not rest its decision on a single factor," but will look to and weigh all of these factors. *McCracken v. Olson Companies, Inc.*, 500 N.E.2d 487, 491 Ill.App.3d 1986).

### 1.

We first consider whether KGK's allegations suggest plausibly, and not merely speculatively, that there is "such unity of interest and ownership that the separate personalities of the corporation [SourceOne] and the individual [Mr. Lopez] . . . no longer exist." *Van Dorn*, 753 F.2d at 569-70.

6

At the outset, we note that KGK offers no allegations of: (1) inadequate capitalization; (2) failure to issue stock; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; or (11) the corporation existing as a mere facade for the operation of the dominant stockholders. At most, KGK seeks to suggest that the following factors plausibly suggest that the corporate veil should be pierced: (3) failure to observe corporate formalities, and (7) absence of corporate records; (6) nonfunctioning of the other officers or directors; (8) commingling of funds; and (10) failure to maintain arm's-length relationships among related entities. We address KGK's allegations on those matters in turn.

To plead a failure to observe corporate formalities or to keep corporate records, KGK primarily alleges facts having to do with a PriceWaterhouseCoopers audit of SourceOne (Am. Third-Party Compl. ¶¶ 22-23, 26-28). During that audit, a binder of information allegedly disappeared, sales orders and shipping documents were difficult to locate or could not be found, and Mr. Lopez was unable or unwilling to give Price Waterhouse access to SourceOne's inventory balances and purchasing/shipping records located at its manufacturer's facility. However, those allegations do not plausibly suggest an endemic failure to observe corporate formalities or keep records. In *McCracken*, 500 N.E.2d at 491-82, which KGK cites as a case where the corporate veil was pierced, the stock and minute book of the defendant's company did not have any entries for the ten years preceding the claim, and the defendant had executed a lease and option agreement without obtaining corporate authorization. The alleged conduct of SourceOne in connection with the Price Waterhouse audit simply does not rise to that level. The Price Waterhouse allegations are consistent with an episodic lapse in record keeping or with a disinclination to cooperate in that particular audit. If

episodes of subpar record keeping were sufficient to establish an alter ego theory, then piercing the corporate veil would become common place and would not be the extraordinary act that it is under Illinois law.

KGK's additional allegations on this score fare no better. KGK alleges that in 2006, Mr. Lopez caused SourceOne to switch from a four-digit invoice number to a five-digit invoice number (Am. Third-Party Compl. ¶ 29). While KGK surely included this allegation to suggest that Mr. Lopez was trying to conceal sales, the mere fact of the switch, without more, does not plausibly suggest that corporate formalities were abandoned. KGK also alleges that Mr. Lopez's wife prepared certain accounting information for SourceOne at their home (*Id.* at ¶¶ 24-25). This allegation does not suggest that SourceOne failed to maintain records; the allegation states that in fact accounting records were being prepared. The fact that in some instances this was done by Mr. Lopez's wife rather than someone whom SourceOne would have to pay does not plausibly suggest an abandonment of corporate formalities; it is equally – if not more – plausible that Mr. Lopez enlisted his wife's assistance to economize.

In an attempt to show the non-functioning of other officers or directors, KGK alleges that Mr. Lopez alone makes the business decisions of SourceOne: "even when SourceOne's employees interacted with KGK, they *apparently* were not empowered to make decisions. This held true for, among other things, issues of accounting, marketing, sales, and customer relations" (Am. Third-Party Compl. ¶ 19) (emphasis added). This allegation of an "apparent" lack of empowerment is conclusory, and is entitled to no weight in our analysis. Even were it otherwise, this allegation would not advance KGK's alter ego claim. The fact that officers of a company get final clearance on business decisions from the president does not strike us as unusual, and more importantly, under

Illinois law control of the corporation alone is not enough to warrant piercing the corporate veil. *Melko v. Dionisio*, 580 N.E.2d 586, 595 (Ill. App. 3d 1991) (being the sole shareholder of a corporation is not sufficient to warrant veil-piercing). KGK's allegation of non-functioning officers and directors fails to cross the line from speculation to plausibility.

In an effort to show commingling of funds, KGK alleges that SourceOne and Mr. Lopez's wife borrowed a home equity loan and gave, as collateral, a mortgage on the Lopez residence (Am. Third-Party Compl. ¶ 30). That allegation is insufficient to plausibly suggest that SourceOne was a mere "dummy or sham." *See Bankers Trust Co. v. Chicago Title & Trust Company*, 412 N.E.2d 660, 664 (Ill. App. 3d 1980) (holding that a personal guarantee undertaken by a business owner and his wife, who was not part of the company, is not an unusual situation for a small business and does not demonstrate the unity of interest required to pierce the corporate veil).

Finally, to show a failure to maintain arm's-length relationships among related entities, KGK alleges that Mr. Lopez exerted considerable control over SourceOne and stated that "SourceOne is Jesse Lopez," that Mr. Lopez's wife took out a loan on behalf of SourceOne, and that Mr. Lopez signed a Settlement Agreement with KGK on both a line designated for the president of SourceOne and on a separate line for Mr. Lopez in his individual capacity (Am. Third-Party Compl. ¶¶ 20, 30 and 14-15). We already have explained that taking a loan on the Lopez residence to inject money into SourceOne does not support piercing the corporate veil. Moreover, the fact that Mr. Lopez stated that "SourceOne is Jesse Lopez" is of no moment. Many corporations – small and large – are often identified with a prominent person. In the 1970s, one might have said "Chrysler is Lee Iacocca"; today, one might say that "Microsoft is Bill Gates." In neither event could anyone plausibly suggest that the corporate veils of those corporations should be pierced. And, the fact that

9

Mr. Lopez signed the Settlement Agreement both as SourceOne's president and in his individual capacity, and made himself personally liable for only part and not all of the terms of that agreement, points to a demarcation between SourceOne and Mr. Lopez as an individual, and not a blurring of their separate existences.

In sum, when we consider collectively KGK's allegations concerning Mr. Lopez's position as founder, president, CEO, and managing member of SourceOne, his relationship to his officers, the Price Waterhouse audit, and the interaction of his wife with the company, we fail to see a plausible statement of "'such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist[.]'" *Van Dorn*, 753 F.2d at 569-70 (*quoting Macaluso*, 420 N.E.2d at 255). KGK's allegations do not state a claim for piercing the corporate veil.

### 2.

KGK's allegations also fail to plausibly suggest that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Van Dorn*, 753 F.2d at 569-70. In *Sea-Land Services, Inc. v. Pepper Source*, 941 F.2d 519, 522-23 (7th Cir. 1991), the Seventh Circuit found that the "promote injustice" test requires something less than an affirmative showing of fraud, but something more than the mere prospect of an unsatisfied judgment. That is, "some element of unfairness, something akin to fraud or deception, or the existence of a compelling public interest must be present in order to disregard the corporate fiction." *Pederson v. Paragon Pool Enterprises*, 574 N.E.2d 165, 169 (Ill. App.3d 1991). Illinois courts have pierced the corporate veil to avoid injustice when failure to do so would: unfairly enrich one of the parties, *B. Kreisman & Co. v. First Arlington Nat'l Bank*, 415 N.E.2d 1070, 1073 (Ill. App.3d 1980); allow a parent corporation,

that created a subsidiary's liabilities and caused the subsidiary's inability to meet those liabilities, to escape responsibility, *In re ContiCommodity Servs., Inc., Sec. Litig.*, 733 F. Supp. 1555, 1565 (N.D. Ill. 1990); allow former partners to ignore obligations, *Gromer, Wittenstrom & Meyer, P.C. v. Strom*, 489 N.E.2d 370, 374 (Ill. App.3d 1986); or uphold a corporate arrangement to keep assets in a liability-free corporation while placing liabilities on an asset-free corporation, *Van Dorn*, 753 F.2d at 569; *Tome Engenharia E. Transportes, Ltd. v. Malki*, 1996 WL 172286 at *5 (N.D. Ill. Apr. 11, 1996), citing *Sea-Land Svcs. Inc. v. Pepper Source*, 993 F.2d 1309, 1312 (7th Cir. 1993).

Here, KGK's allegations do not meet any of those standards. KGK alleges that "injustice would be promoted if Mr. Lopez were to escape personal liability because (a) Mr. Lopez has used his control over Source One to wrongfully injure KGK; (b) Mr. Lopez has been and will continue to be unjustly enriched; (c) Mr. Lopez's actions have injured KGK by undermining its market share and goodwill; (d) unless Mr. Lopez is enjoined from further infringing activities KGK will be irreparably injured" (Am. Third-Party Compl. ¶ 34; KGK Mem. at 11 (*citing* Third-Party Complaint)). KGK's first three points are mere conclusions; and, none of those conclusions are advanced by the more specific conduct that KGK has alleged and that we already have concluded does not plausibly show that SourceOne is a mere dummy or sham for Mr. Lopez.

KGK's final point, that "unless Mr. Lopez is enjoined from further infringing activities KGK will be irreparably injured," is premised on the view that "if Lopez were not personally enjoined from further infringements, he would be able to start yet another new company to continue to offer the same line of infringing products" (Am. Third-Party Compl. ¶ 34). That argument ignores that if KGK obtains an injunction against SourceOne, that injunction will bind SourceOne's "officers, agents, servants, employees and attorneys." Fed. R. Civ. P. 65(d)(2)(B). The Seventh Circuit

11

applied this rule in *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 919 (7th Cir. 1996), holding that an injunction issued against DEV also bound Yamagata, DEV's president and one of its directors. KGK's claims against SourceOne subsume its claims against Mr. Lopez, and thus any injunctive relief against SourceOne will protect KGK from the post-judgment actions by Mr. Lopez that KGK claims to fear.²

**B.**

KGK argues that even if its alter ego allegations fail, it has sufficiently pled direct individual claims against Mr. Lopez for patent infringement (Counts I-II and VIII) and breach of contract (Counts V-VI), which do not depend on an alter ego theory. For the reasons set forth below, we reject that argument.

**1.**

KGK argues that it need not pierce the corporate veil to pursue the patent infringement claims against Mr. Lopez, because those claims constitute direct claims against Mr. Lopez in his individual capacity for contributory or inducing infringement (KGK Mem. at 1, 8-9; KGK Suppl. Mem. at 1, 5-6). To be sure, "it is well settled that corporate officers who actively aid and abet their corporation's infringement may be personally liable for inducing infringement under § 271(b), regardless of whether the corporation is the alter ego of the corporate officer," *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1578-79 (Fed. Cir. 1986) (*citing Power Lift, Inc. v.*

---

²We have considered *Bobak Sausage Co. v. A&J Seven Bridges, Inc.*, No. 07 C 4718, 2008 WL 4181744, *10 (N.D. Ill., Sept. 5, 2008), which KGK cites in support of its argument that piercing the corporate veil is necessary to protect KGK from post-judgment conduct by Mr. Lopez (KGK Mem. at 11). We disagree that *Bobak* stands for that proposition, as it contains no discussion or analysis on that point and finds that the complaint otherwise "clearly alleges claims and seeks remedies against the Individual Defendants based on their past and current use of the Mark." *Bobak*, 2008 WL 4181744, *10.

12

*Lang Tools, Inc.*, 774 F.2d 478, 481 (Fed.Cir.1985)). However, we disagree that KGK has pled direct claims of patent infringement against Mr. Lopez.

To begin with, KGK's allegations of infringement by Mr. Lopez are inextricably linked to the alter ego claims. Each of the patent claims incorporate the section of the third-party complaint entitled "Facts," which is devoted principally to allegations designed to show that the corporate veil should be pierced (Am. Third-Party Compl. ¶¶ 35, 43, and 101). Then, in each of the patent infringement counts, KGK alleges that Mr. "Lopez, using Source One as his alter ego, has engaged in the infringing activities with actual knowledge of the [patent]" (*Id.* at ¶¶ 39, 47, and 105), and that those activities were "willful and deliberate" (*Id.* at ¶¶ 40, 48, and 106). There are no allegations of infringing conduct by Mr. Lopez that are untethered from alleged action by SourceOne.

That said, even if we construe the allegations against Mr. Lopez as asserting direct claims of infringement, they fail to pass muster under *Twombly*. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (quotations omitted). Here, KGK has not pled anything to buttress its conclusory allegation that Mr. Lopez engaged in infringing activity.

Accordingly, we conclude that KGK has not asserted claims of patent infringement directly against Mr. Lopez, and that its patent infringement claims against him may not proceed unless KGK has adequately pled an alter ego claim. As we have explained above, KGK has failed to do so. For that reason, the patent infringement claims cannot survive the dismissal of the alter ego claim.

## 2.

In Counts V and VI, KGK alleges two claims for breach of contract. Those counts, like all the others, incorporate the alter ego allegations set forth in the "Facts" section of the pleading (Am.

Third-Party Compl. ¶¶ 73 and 83). That said, as to these counts, we agree that KGK has attempted to plead direct conduct by Mr. Lopez, and not simply an alter ego claim. But, for the reasons that follow, we conclude that KGK's allegations are insufficient to plead direct claims against Mr. Lopez.

In Count V, KGK alleges that Mr. Lopez breached the License Agreement, in which Mr. Lopez owed a duty to KGK to "use commercially reasonable efforts to promote sales of the Products during the Term" and "to use commercially reasonable efforts to effectively manufacture and market sufficient quantities of the Products to meet customer demands and to make the benefit of the Products known and available to the public" (*Id.* at ¶ 74-75) (quoting License Agreement, Compl., Ex. 1). KGK alleges that Mr. Lopez breached his contractual duties by "developing, promoting, and selling the family of products under the name Cholesstrinol as direct competitors of KGK's Sytrinol product" (*Id.* at ¶ 76). The amended third-party complaint incorporates the License Agreement by reference (*Id.* at ¶ 10).

However, KGK does not allege that Mr. Lopez signed the License Agreement in his personal capacity. The License Agreement itself provides for signatures only by SourceOne and KGK, and not by Mr. Lopez in his individual capacity (Compl., Ex. 1). As a signatory to the License Agreement solely in his capacity as an officer of SourceOne, Mr. Lopez is protected by the corporate veil. *Tome*, 1996 WL 172286 at *3 (stating that corporate officers "are not generally liable for the corporation's debts and obligations"). Since KGK has not pled allegations sufficient to pierce the corporate veil, KGK's contract claim in Count V fails.

In Count VI, KGK alleges that Mr. Lopez breached a Settlement Agreement, which KGK incorporates by reference into the third-party complaint (Am. Third-Party Compl. ¶ 12; Compl., Ex. 2). KGK alleges that Mr. Lopez signed the Settlement Agreement both on behalf of SourceOne

14

and personally (Am. Third-Party Compl. at ¶¶ 14-15), an allegation that is borne out by the face of the Settlement Agreement. KGK specifically alleges that Mr. Lopez breached Paragraph 7 of the Settlement Agreement, which provides, "Source One will not retain any inventory of Sytrinol after the date of termination of the License Agreement" (*Id.* at ¶ 85). KGK alleges that Mr. Lopez – "and SourceOne as his alter ego" – breached Paragraph 7 by beginning to sell a rebranded Sytrinol product that directly competes with KGK's Sytrinol product during the term of the License Agreement (*Id.* ¶ 86-87).

Once again, by alleging conduct by Mr. Lopez "and SourceOne as his alter ego," KGK intertwines its charge against Mr. Lopez with its alter ego claim that has been rejected. However, we do not rely on that fact alone to dismiss Count VI, since it also is true that – unlike the case with the License Agreement at issue in Count V – Mr. Lopez signed the Settlement Agreement in his individual capacity as well as on behalf of SourceOne. But, the fact that Mr. Lopez signed the Settlement Agreement individually does not mean that he signed on to all of its terms.

Paragraph 7, the provision at issue in Count VI, states that *SourceOne* will not retain inventory, and *SourceOne* will be responsible for certain obligations. Paragraph 7 makes no reference whatsoever to Mr. Lopez. By contrast, the very next provision in the Settlement Agreement, Paragraph 8, obligates both SourceOne and Mr. Lopez to return or destroy confidential and proprietary technical information relating to Sytrinol and KGK.

When interpreting a contract as a matter of law, which we may do when the terms are clear and unambiguous, *Kaplan v. Shure Bros., Inc.*, 266 F.3d 598, 604 (7th Cir. 2001), we strive to give the contract a common sense reading that gives effect to all of its terms. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009). Here, the plain language of the Settlement Agreement

15

reveals which terms would apply to SourceOne and which would apply to Mr. Lopez. The parties specified a provision – Paragraph 8 – to which Mr. Lopez would be personally bound. KGK's allegations offer no plausible basis to read the Settlement Agreement to impose obligations on Mr. Lopez beyond those established by the face of that agreement. We therefore reject KGK's argument that it may proceed on Count VI as a direct, rather than an alter ego, claim.

## CONCLUSION

For the foregoing reasons, Mr. Lopez's motion to dismiss KGK's Amended Third-Party Complaint (doc. # 42) is granted.

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: July 21, 2009**